UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **JUSTUS JAMES KALSON,** <br> **TDCJ #02409444,** | § <br> § <br> § | |
| **Plaintiff,** | § <br> § | SA-23-CV-00930-XR |
| v. | § <br> § | |
| **OFFICER ANDREW SCOTT, #3345,** <br> **Comal County Jail,** | § <br> § <br> § | |
| **Defendant.** | § <br> § | |

**ORDER**

Before the Court are *pro se* Plaintiff Justus James Kalson's 42 U.S.C. § 1983 Sixth Amended Civil Rights Complaint, Defendant Officer Andrew Scott's Motion for Summary Judgment, Kalson's response to the motion for summary judgment, and Officer Scott's reply to Kalson's response. (ECF Nos. 32, 55, 72, 73). Upon review, the Court orders Officer Scott's motion for summary judgment **GRANTED**. (ECF No. 55).

**BACKGROUND**

Records from the Texas Department of Criminal Justice ("TDCJ") show Kalson is currently confined in the Clemens Unit based on convictions for fraud, tampering with evidence, felon in possession of a firearm, possession of a controlled substance, and obstruction or retaliation. *See* Texas Department of Criminal Justice Inmate Search (last visited Feb. 10, 2025). While confined, Kalson filed this § 1983 action based on events that allegedly occurred in April 2022 when he was incarcerated in the Comal County Jail ("CCJ"). (ECF No. 1); *see* public.co.comal.tx.us/JailingSearch.aspx?ID=400 (last visited Feb. 10, 2025). Kalson ultimately

filed a Sixth Amended Complaint, which is the live pleading, naming Officer Andrew Scott, #3345, Comal County Jail, as the sole defendant. (ECF No. 32).

Kalson contends that on April 13, 2022, Officer Scott placed him in an unsanitary separation cell as punishment. (*Id.*). He claims the cell walls and floor had been smeared with feces by the inmate who previously occupied the cell. (*Id.*). Kalson asserts the cell had not been cleaned or sanitized, and Officer Scott placed him there despite the unsanitary conditions. (*Id.*). Kalson states he immediately complained to Officer Scott who "acknowledged" the unsanitary condition of the cell. (*Id.*). Kalson claims he was "humiliated and degraded" by being left in the cell and "forced to clean up after the previous inmate." (*Id.*). According to Kalson, he was left in the cell for thirty (30) days. (*Id.*). Kalson claims Officer Scott's actions violated his rights under the Eighth Amendment—the right to be free from cruel and unusual punishment—and the Fourteenth Amendment—the right to equal protection under the law. (*Id.*).

The Court ordered service on Officer Scott. (ECF Nos. 7, 10). Officer Scott filed answers to Kalson's various Amended Complaints and ultimately filed a motion for summary judgment. (ECF No. 55). Kalson filed a response to the motion for summary judgment, to which Officer Scott then filed a reply. (ECF Nos. 72, 73).

**STANDARD OF REVIEW**

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018). Where the nonmovant bears the burden of proof at trial, the summary judgment movant must offer evidence that undermines the nonmovant's claim or point out the

absence of evidence supporting essential elements of the nonmovant's claim; the movant may, but need not, negate the elements of the nonmovant's case to prevail on summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). A complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward *evidence* to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001). "The *evidence* of the non–movant is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir.), *cert. denied*, 139 S.Ct. 69 (2018) (emphasis added) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Mere allegations in the nonmovant's complaint are not evidence. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). However, verified allegations in an inmate–plaintiff's complaint are deemed competent summary judgment evidence. *See Al–Raid v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995). Nevertheless, even verified allegations cannot defeat summary judgment if they are simply "conclusory allegations," "unsubstantiated assertions," or constitute "only a scintilla of evidence." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Hunt v. Pierson*, 730 F. App'x 210, 212 (5th Cir. 2018) (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)).

The usual summary–judgment burden of proof does not apply when a defendant moves for dismissal based on qualified immunity. *See Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021); *Escobar v. Montee*, 895 F.3d 387, 393 (5th Cir. 2018). Although nominally an affirmative defense, when a defendant properly pleads qualified immunity, the burden shifts to the

plaintiff to negate the defense by demonstrating the defendant is not entitled to immunity. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). To rebut the defense, a plaintiff must raise a genuine issue of material fact showing the defendant's conduct violated an actual constitutional right and the defendant's actions were objectively unreasonable in light of law that was clearly established at the time of the alleged violation. *Bagley v. Guillen*, 90 F.4th 799, 802 (5th Cir. 2024); *see Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011). Despite this shifting burden, a court must still "view the facts in the light most favorable to the nonmovant." *Darden*, 880 F.3d at 727.

Whether qualified immunity is at issue or not, the Fifth Circuit requires a nonmovant to submit "significant probative evidence" from which the jury could reasonably find for the nonmovant. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). The non–movant's evidence must raise more than some "metaphysical doubt as to the material facts." *Funches*, 905 F.3d at 849. A genuine issue of fact does not exist "if the record taken as a whole could not lead a rational trier of fact to find for the non–moving party." *Hunt*, 730 F. App'x at 212 (quoting *City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014)).

## ANALYSIS

As described above, Kalson contends Officer Scott violated his constitutional rights by placing him in a cell covered in feces. (ECF No. 32). Kalson claims Officer Scott's actions violated his Eighth Amendment right to be free from cruel and unusual punishment as well as his right to equal protection under the Fourteenth Amendment. (*Id.*). The Court first notes that although Kalson cites the Eighth Amendment in support of his claim of cruel and unusual punishment, the amendment applicable to this claim is the Fourteenth Amendment because at the time of the events forming the basis of Kalson's claims, he was a pretrial detainee. *See Cadena v. El Paso Cnty.*,

4

946 F.3d 717, 727 (5th Cir. 2020). A pretrial detainee's constitutional rights "are found in the procedural and substantive due process guarantees of the Fourteenth Amendment." *Estate of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996)). Ultimately, however, whether under the Eighth or Fourteenth Amendment, the standard is the same. *See Cadena*, 946 F.3d at 727; *see also Hare*, 74 F.3d at 643 ("Finding no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs[.]").

In his motion for summary judgment, Officer Scott asserts entitlement to judgment as a matter of law. (ECF No. 55). Officer Scott contends that as to both claims he is entitled to qualified immunity, arguing Kalson has failed to sustain his burden to raise a genuine issue of material fact establishing a constitutional violation or point to clearly established law showing Officer's Scott's actions were objectively unreasonable. (*Id.*).

### A. Substantive Law

#### 1. *Qualified Immunity*

Qualified immunity has been described as "'an entitlement not to stand trial or face the other burdens of litigation.'" *Staten v. Adams*, 939 F. Supp. 2d 715, 723 (S.D. Tex. 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 199–200 (2001)), *aff'd*, 615 F. App'x 223 (5th Cir. 2015). Qualified immunity "provides ample protections to all but the plainly incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 511, 526 (1986)). It is a shield from "'undue interference'" with a government official's duties and "'potentially disabling threats of liability.'" *Collie v. Barron*, 747 F. App'x 950, 952 (5th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). When resolving questions of qualified immunity, reviewing courts

"engage in a two–pronged inquiry." *Tolan v. Cotton*, 572 U.S. 650, 655 (2014) (per curiam). Under the first prong, the Court must determine whether the facts alleged by the plaintiff "make out a violation of a constitutional right." *Darden*, 880 F.3d at 727 (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)); *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008). The second prong requires the Court to determine whether the right in question was "clearly established" at the time of the alleged constitutional violation. *Darden*, 880 F.3d at 727; *Bush*, 513 F.3d at 500. This Court has discretion to decide the order in which it analyzes the prongs; however, deciding the prongs in order is often beneficial. *See Tolan*, 572 U.S. at 656; *Darden*, 880 F.3d at 727.

Thus, because Officer Scott has asserted qualified immunity in his motion for summary judgment, Kalson bears the burden of putting forth "summary judgment evidence" demonstrating why Officer Scott is not entitled to judgment as a matter of law based on qualified immunity. *See Tucker*, 998 F.3d at 173; *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021). In other words, Kalson must put forth evidence making out a constitutional violation that was clearly established at the time of the alleged violation. *See Darden*, 880 F.3d at 727.

2. *Conditions of Confinement v. Episodic Acts or Omissions*

As previously stated, pretrial detainees have constitutional rights that flow from the procedural and substantive due process guarantees of the Fourteenth Amendment. *Estate of Henson*, 795 F.3d at 462. The Fourteenth Amendment entitles pretrial detainees to be provided with basic human needs such as food, water, clothing, medical care, and safe conditions. *See Hare*, 74 F.3d at 639, 650. Such basic needs constitute "humane conditions of confinement" required under the Eighth Amendment, which are applicable to pretrial detainees through the Fourteenth Amendment. *Hare*, 74 F.3d at 649; *see Valentine v. Collier*, 978 F.3d 154, 162 (5th Cir. 2020)

6

(holding Eighth Amendment requires prison officials to provide "human conditions of confinement" with due regard for inmate health and safety).

Fourteenth Amendment challenges such as those alleged by Kalson may be brought under two alternate theories: an attack on a "condition of confinement" or based on an "episodic act or omission." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 644–45); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (1999). A claim falls under the condition–of–confinement theory when the wrong complained of involves a general condition of confinement. *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). Examples of these types of claims involve the use of durable restraints, overcrowding, deprivation of phone or mail privileges, the use of disciplinary segregation, or exposure to excessive heat. *Garza v. City of Donna*, 922 F.3d 626, 633–34 (5th Cir. 2019). Episodic–act–or–omission claims, on the other hand, concern alleged harms arising from the particular act or omission of an official as opposed to harms that result from an unconstitutional policy, practice, or rule of the jail or prison. *Id.* at 632. Moreover, whereas condition–of–confinement claims seek to challenge the constitutionality of pervasive, systemic policies and customs themselves, episodic–act–or–omission claims merely challenge actions of a jail or prison official in a particular instance. *See Estate of Henson*, 795 F.3d at 466–67.

Given Kalson's allegation against Officer Scott—that he placed Kalson in an unsanitary cell smeared with feces, the Court finds that Kalson's claim is one alleging an episodic act or omission. *See Garza*, 922 F.3d at 633–34; *Estate of Henson*, 795 F.3d at 466–67. Kalson alleges a particular act by Officer Scott as opposed to harm resulting from an unconstitutional policy, practice, or rule of the Comal County Jail, i.e., he is challenging Officer's Scott's actions in a particular instance, not the constitutionality of some systemic policy or custom of the Comal

County Jail. *See Garza*, 922 F.3d at 632; *Estate of Henson*, 795 F.3d at 466–67. Therefore, the Court will review Kalson's claim as one asserting constitutional violations based on episodic acts or omissions. *See, e.g., Velazquez v. Baker*, No. 5:20-CV-078-BQ, 2021 WL 912505, at *8 (N.D. Tex. Jan. 28, 2021) (finding pretrial detainee's claim against jail official who placed detainee in "dirty cell" as one for episodic act or omission), *report & recommendation adopted*, No. 5:20-CV-00078-H, 2021 WL 808738 (N.D. Tex. Mar. 3, 2021).

### 3. *Episodic Acts or Omissions—Unsanitary Cell Conditions*

When alleging an "episodic act or omission" by a jail official in violation of the constitutional prohibition against cruel and unusual punishment based on unsanitary cell conditions, a pretrial detainee must show not only that the condition alleged was objectively "so serious as to deprive [the detainee] of the minimal civilized measure of life's necessities," but that the jail official "acted with deliberate indifference" to a substantial risk of serious harm to the detainee. *Alexander v. Tex. Dep't of Criminal Justice*, 951 F.3d 236, 241 (5th Cir. 2020); *see Alexander v. Tippah Cnty.*, 351 F.3d 626, 630 (5th Cir. 2003); *Hare*, 74 F.3d at 636 (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). A jail official may be held liable for episodic acts or omissions only if the detainee shows the jailer "had actual subjective knowledge of a substantial risk of serious harm to their detainee," but was deliberately indifferent to that risk. *Hare*, 74 F.3d at 650.

"To establish deliberate indifference, the [detainee] must show the [jail] official knew of and disregarded an excessive risk to inmate health or safety[]" "by failing to take reasonable measures to abate it." *Alexander*, 951 F.3d at 241 (citing *Farmer*, 511 U.S. at 837); *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 243 (5th Cir. 2021). "That is, the [detainee] must

8

show both that (1) the [jail] official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and (2) the official drew the inference." *Alexander*, 951 F.3d at 241. Deliberate indifference presents an extremely high bar. *Campos v. Webb Cnty.*, 597 F. App'x 787, 792 (5th Cir. 2015); *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

Prison condition standards are evolving, *Gates v. Cook*, 376 F.3d 323, 332–33 (5th Cir. 2004), and the risk an inmate complains of must be "so grave that it violates contemporary standards of decency" such that that society will not tolerate it. *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Deprivation of a basic need violates the Constitution only when the deprivation is so serious as to amount to a denial of "the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Being forced to reside in an unsanitary cell does not automatically violate the Constitution's mandate against cruel and unusual punishment. *Taylor v. Stevens*, 946 F.3d 211, 220 (5th Cir. 2019). Rather, only in extreme circumstances will unsanitary conditions rise to the level of a constitutional violation. *See, e.g., Hope v. Harris*, 861 F. App'x 571, 584 (5th Cir. 2021) (per curiam) (holding unsanitary conditions violated Constitution where wall almost completely covered in black mold, urine, and feces); *Gates*, 376 F.3d at 333–34 (holding constitutional violation shown where inmates lived in cells covered with dried fecal matter, crusted food on walls, water from flooded toilets, chipped paint, and inadequate cleaning supplies provided); *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) (holding constitutional violation occurred when inmate forced for ten months to sleep on wet mattress in filthy water contaminated with human waste). When unsanitary conditions exist only for a brief period, a pretrial detainee generally cannot state

a claim for cruel and unusual punishment based on an episodic act or omissions. *See, e.g., Johnson v. Anderson*, 255 F. App'x 851, 854 (5th Cir. 2007) (holding "three or four days" of unsanitary conditions in holding cell before it was cleaned does not demonstrate deliberate indifference to serious needs); *Desroche v. Strain*, 507 F. Supp.2d 571, 581 (E.D. La. 2007) (finding detainee's episodic act or omission claim based on confinement in unsanitary cell failed because "a short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation"). Moreover, when an inmate is given supplies and an opportunity to clean an unsanitary or filthy cell, there is no constitutional violation. *See Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (holding inmate confined in cell with blood on walls and excrement and flood on floor did not constitute cruel and unusual punishment where inmate was provided cleaning supplies and only kept in cell for three days); *Shakka v. Smith*, 71 F.3d 162, 167–68 (4th Cir. 1995) (holding no constitutional violation when inmate given water and cleaning supplies but denied shower for three days after having human excrement thrown on him).

    4.   <u>*Equal Protection Clause*</u>

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. CONST. amend. XIV, § 1); *see Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016). Generally, to state an equal protection claim under § 1983, a plaintiff must allege that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001). "[I]solated events that adversely affect individuals are

not presumed to be a violation of the equal protection clause." *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980).

There are two types of equal protection clause claims, those involving protected classes and those addressing a "class of one." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000). To establish the first type, which is the traditional type of equal protection clause claim, a § 1983 plaintiff must allege and establish a state actor intentionally discriminated against him because of his membership in a protected class. *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). For a "class of one" claim," a plaintiff must show he was intentionally treated differently from others who were similarly situated and there was no basis for the difference in treatment. *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Olech*, 528 U.S. at 564); *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 924 (5th Cir. 2007).

### B. Application

#### 1. Episodic Act or Omission: Cruel and Unusual Punishment

As discussed, Kalson has alleged an episodic act or omission by Officer Scott. (ECF No. 32); *see Garza*, 922 F.3d at 633–34; *Estate of Henson*, 795 F.3d at 466–67. He has alleged that Officer Scott inflicted cruel and unusual punishment in violation of his rights under the Fourteenth Amendment by placing him in an unsanitary cell. (ECF No. 32). However, Officer Scott contends he is entitled to qualified immunity as to this claim because Kalson cannot establish a constitutional violation. (ECF No. 55). Officer Scott points to his summary judgment evidence and argues it establishes any alleged deprivation was not sufficiently serious to establish a constitutional violation. (*Id.*). The summary judgment evidence, including video evidence, establishes that contrary to Kalson's assertions: (1) the cell was cleaned by other inmates three

11

days before Kalson was placed inside; (2) after cleaning, the cell remained empty until Kalson was placed there; and (3) even if the cell was unsanitary when Kalson was placed there, Officer Scott provided Kalson with cleaning supplies and Kalson cleaned the cell. (*Id.*). Accordingly, Officer Scott argues the summary judgment evidence establishes he was not deliberately indifferent to a serious risk of harm to Kalson based on the placement of Kalson in the allegedly unsanitary cell. The Officer argues Kalson has not produced any summary judgment evidence to counter his undisputed evidence and therefore, has failed to sustain his burden to make out a constitutional violation.

The summary judgment evidence, which was verified and authenticated by an affidavit executed by Major Adrian Delgado, the custodian of records for the relevant documents, includes an April 13, 2022 incident report showing why Kalson was placed in a separation cell in the first place. (ECF No. 55, Exh. A–1). According to the report, on April 13, 2022, Officer Scott found a letter written by Kalson on behalf of himself and other inmates in pod D–4 that contained demands and threatened "peaceful striking" if the demands were not met. (*Id.*, Exhs. A–1, A–1, A–3). Officer Scott removed Kalson from the D–4 pod and placed him in the separation cell, which is the subject of Kalson's claims here. (*Id.*, Exh. A–5 at 0:00:00–0:00:33). Officer Scott interviewed Kalson in the cell; Kalson admitted writing the letter on behalf of the inmates, but denied it was a threat. (*Id.*, Exh. A–4 at 0:01:10–0:02:06).

The various videos submitted by Officer Scott in support of his motion for summary judgment show from all angles the cell about which Kalson complains. (*Id.*, Exh. A–4, A–5, A–8, A–9, A–19). The cell walls and metal "furniture" are off–white in color and include a bed, small desk, and seat, which are attached to the walls. (*Id.*, Exh. A–4, A–5, A–8, A–9, A–19). The cell

also contains a silver metal toilet and a small shower. (*Id.* Exh. A–4 at 0:00:50). The floor of the cell is concrete and dark gray in color with a drain in the middle. (*Id.*, Exh. A–4, A–5, A–8, A–9, A–19). As for the cell's condition, contrary to Kalson's assertions, the cell does not appear to be "filthy" or "uninhabitable," and does not show "feces smeared on the bed, floor, and walls." (ECF No. 32). The cell appears relatively clean. (ECF No. 55, Exh. A–4, A–5, A–8, A–9). In fact, when Kalson was first placed in the cell, two officers stayed in the cell to speak to him. (*Id.*, Exh. A–5 at 0:00:31–0:04:46). Kalson sat on the bare metal bed and one officer sat across from Kalson on the metal seat and placed his bare arm on the metal table next to the seat. (ECF No. 55, Exh. A–5 at 0:00:57, 0:01:33). A second officer leaned against one of the cell walls. (*Id.* at 0:00:58–0:01:01). If the bed, floor, and walls had been smeared with feces, it seems unlikely that either Kalson or the officers would have casually sat on the bed or seat, leaned against the wall, or placed a bare arm on the surface of the table. Furthermore, Kalson does not appear agitated about anything, including the condition of the cell. (*Id.* at 0:00:00–0:03:48). Below is a screenshot of the cell when Kalson was first placed inside:



(*Id.* at 0:00:30).

Officer Scott also presented summary judgment evidence showing the cell had been cleaned by two other inmates just before midnight on April 10, 2022. (*Id.*, Exh. A–19 at 0:00:00–0:09:10). Although before the inmates start cleaning there is trash on the bed and dark matter on the metal bed, the cell door, and a nearby wall that could be feces, the bed, walls, and floors are not "smeared" with feces as Kalson alleges. (ECF No. 32). Nevertheless, an inmate removes the trash and mops and wipes down the cell with soapy water and sanitizing sheets, including the bed where the dark matter appeared. (ECF No. 55, Exh. A–19 at 0:01:15–0:09:10). A second inmate uses additional powder cleanser and spray sanitizer to clean portions of the cell and dries portions of the cell with clean towels. (*Id.* at 0:04:59, 0:06:21). Admittedly, the video does not show a pristine cell after cleaning, but it certainly does not show a filthy cell covered in excrement or other human waste. (*Id.* at 0:09:10). According to the undisputed summary judgment evidence, no inmate was housed in this separation cell from when it was cleaned on April 10, 2022, until April 13, 2022, when Kalson was placed there. (*Id.*, Exh. A).

Moreover, despite the prior cleaning, at the end of Officer Scott's interview with Kalson about the letter, which took place in the separation cell, Officer Scott asks Kalson if he would like cleaning supplies. (*Id.*, Exh. A–4 at 0:02:07). Kalson says he "would love cleaning supplies," describing the cell as "the dirtiest cell I've ever seen in my life." (*Id.* at 0:02:09–:11). The various videos contradict Kalson's statement.

Kalson was first placed in the separation cell on April 13, 2022 at 17:16:22, i.e., 5:16 p.m. (*Id.*, Exh. A–5 at 0:0031). He was provided cleaning supplies that same day at 18:46:04, i.e., 6:45 p.m., approximately ninety (90) minutes after he was placed in the cell. (*Id.*, Exh. A–9 at 0:00:04). Kalson was provided a large broom and dustpan, a large mop bucket with soapy water, and a

14

couple of brushes. (*Id.* at 0:00:04–0:00:06). He begins cleaning the cell at 18:47:39, i.e., 6:47 p.m. (*Id.* at 0:01:40). Even as Kalson begins to clean, the video does not show feces or other matter "smeared" on the walls, floors, or other surfaces in the cell. (*Id.*). At most, there are a few spots of dark matter, which the Court assumes is feces, on the bed, walls, and cell door. *(Id.)*. As he cleans the cell, Kalson: (1) mops the floor; (2) uses a wet cloth to clean the toilet; (3) mops the walls near the toilet; (4) cleans the metal bed with a wet cloth; (5) wipes down portions of the wall with a wet rag; (6) rinses the walls with the water from the mop bucket; (7) refills the mop bucket with water from the shower several times—the water still appears soapy; (8) uses the broom to push water into the floor drain or under the door; and (9) uses what appears to be his own towel to dry the walls. (*Id.* at 0:01:39–1:40:26). Kalson is obviously upset by having to clean the cell. Although there is no audio from the cell's surveillance camera, Kalson appears agitated, twice throwing the wringer from the mop bucket around the cell.(*Id.* at 0:28:50, 0:29:40). As Kalson cleans, officers bring additional cleaning supplies—a spray bottle filled with liquid and a container with a powder cleaner—at 19:37:18, i.e., 7:37 p.m. (*Id.* at 0:51:19). One of the officers distributes the cleansers in various parts of the cell as Kalson watches. (*Id.* at 0:51:29–0:54:06). An officer also brings Kalson four additional towels. (*Id.* at 1:27:32). Kalson completes cleaning at roughly 20:26:26, i.e., 8:26 p.m., approximately ninety (90) minutes after he started, though the video shows he was not cleaning the entire time. (*Id.* at 1:40:26). When Kalson is done, the cell appears in the video to be cleaned and sanitized. (*Id.*).

Based on the summary judgment evidence produced by Officer Scott, the Court finds he has established as a matter of law that Kalson has failed to satisfy the first prong of the qualified

immunity inquiry. That is, Kalson has failed to make out a violation of his Fourteenth Amendment right to be free from cruel and unusual punishment. *See Darden*, 880 F.3d at 727.

As discussed above, to make out a constitutional violation based on an episodic act or omission involving an unsanitary cell, Kalson first must show the condition of the cell was "so serious as to deprive [him] of the minimal civilized measure of life's necessities." *See Alexander*, 951 F.3d at 241. The Court finds Kalson has not, nor can he, make such a showing. The videos show the condition of the cell, even when Kalson was first confined there, was not "so grave" that it "violat[ed] contemporary standards of decency" considered intolerable by society. *See Helling*, 509 U.S. at 36. The video shows a relatively clean cell. The condition of the cell certainly did not rise to the level found to be unconstitutional in prior cases. *See, e.g., Hope*, 961 F. App'x at 584 (wall covered in black mold, urine, and feces); *Gates*, 376 F.3d at 333–34 (cell covered in dried fecal matter, crusted food, toilet water, chipped paint). The two officers who brought Kalson to the cell sat on the seat, placed a bare arm on the table, and leaned against this wall. This negates Kalson's claims that the entire cell was smeared with feces and was filthy and uninhabitable. Furthermore, the time Kalson spent in the cell before the provision of cleaning products was negligible, a mere ninety (90) minutes. Thus, the alleged unsanitary conditions existed so briefly as to negate a constitutional violation. *See, e.g., Johnson*, 255 F. App'x at 854 (three or four days in an unsanitary cell before cleaning does not demonstrate deliberate indifference to serious needs). Additionally, the cell was cleaned before Kalson's placement therein, and he was then provided cleaning supplies within ninety (90) minutes to further clean the cell, negating any constitutional violation. *See, e.g., Davis*, 157 F.3d at 1006 (giving inmate cleaning supplies negates constitutional violation).

Moreover, Kalson has not shown Officer Scott was deliberately indifferent to an excessive risk to Kalson's health or safety. *See Alexander*, 951 F.3d at 241. Officer Scott took "reasonable measures" to abate any unsanitary conditions in the cell by asking Kalson if he wanted cleaning supplies within minutes after he was confined in the cell and then providing those supplies within ninety (90) minutes. *See id.* Kalson was also provided with additional cleaning and sanitizing measures when an officer entered the cell during the cleaning process and distributed cleaning products.

Kalson filed a response to Officer Scott's motion for summary judgment wherein he attempts to show summary judgment is improper. (ECF No. 72). However, that response does not raise a fact issue as to the existence of a constitutional violation. The response does little more than contend the cell was filthy, unsanitary, and inadequately cleaned before Kalson's confinement. (*Id.*). These claims are negated by the various videos. Kalson's contention that being required to clean the cell himself and a short delay in provision of cleaning supplies is also insufficient to raise a fact issue on the existence of a violation of his constitutional right. (*Id.*).

The Court finds the condition of the cell, even before Kalson's cleaning efforts, was not serious enough to violate standards of decency so as to rise to the level of a constitutional violation. Nor was Officer Scott deliberately indifferent to an excessive risk to Kalson's health or safety. First, the videos negate the existence of any serious risk—the cell was cleaned before Kalson was confined therein and then Kalson was given sufficient supplies to abate any remaining unsanitary conditions. Second, Officer Scott took reasonable efforts to abate any risk by providing Kalson with cleaning supplies in a timely manner. In other words, Officer Scott took action to remedy an issue brought to his attention. Thus, the Court finds Kalson has failed to make out a constitutional

violation based on Officer Scott's episodic act in placing him in the separation cell, thereby entitling Officer Scott to summary judgment on this Fourteenth Amendment claim.

### 2. *Denial of Equal Protection*

In his motion for summary judgment, Officer Scott points out that Kalson failed to allege that Officer Scott's action in placing him in the allegedly unsanitary cell was based on either (1) intentional discrimination because of his membership in a protected class, *see Williams*, 180 F.3d at 705, or (2) intentional disparate treatment from others similarly situated without basis. *See Lindquist*, 669 F.3d at 233. The Court's review of Kalson's Sixth Amended Complaint and his response to Officer Scott's motion for summary judgment confirms Officer Scott's contention. Kalson does not allege, discuss, or produce any summary judgment evidence showing Officer Scott's actions were the result of intentional discrimination or disparate treatment, which are the cornerstone of any claim under the Equal Protection Clause of the Fourteenth Amendment. (ECF Nos. 32, 72). He does not identify any protected class of which he is a member nor any similarly situated prisoners. (ECF Nos. 32, 72). Rather, Kalson does nothing more than conclusorily allege Officer Scott's actions violated his rights under the Equal Protection Clause. This type of "unsubstantiated assertion," even though verified, is insufficient to defeat summary judgment. *See Little*, 37 F.3d at 1075.

Accordingly, because Kalson has failed to allege or produce any evidence of a constitutional violation under the Equal Protection Clause of the Fourteenth Amendment, he has failed to sustain his burden. *See Darden*, 880 F.3d at 727. This entitles Officer Scott to judgment as a matter of law based on qualified immunity as to Kalson's equal protection claim.

## CONCLUSION

Based on the foregoing analysis, the Court finds Kalson has failed to allege a constitutional violation sufficient to support a cruel and unusual punishment claim based on Officer Scott's alleged deliberate indifference to a risk of serious harm, i.e., a Fourteenth Amendment episodic–act–or–omission claim based on Kalson's confinement in an allegedly unsanitary cell. Likewise, Kalson has failed to allege a constitutional violation sufficient to support a claim under the Equal Protection Clause based either on discrimination or disparate treatment. Because Kalson has failed to sustain his burden to make out a constitutional violation based either on cruel and unusual punishment or equal protection, he has failed to overcome Officer Scott's defense of qualified immunity, thereby entitling the Officer to summary judgment.

**IT THEREFORE ORDERED** that Officer Scott's Motion for Summary Judgment (ECF No. 55) is **GRANTED** and Kalson's claims against Officer Scott are **DISMISSED**.

**IT IS FURTHER ORDERED** that Kalson shall take nothing in this cause against Officer Scott.

It is so **ORDERED**.

**SIGNED** this 11th day of February, 2025.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE